UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HENRI EISENBAUM, : NO. 1:10-CV-701

Plaintiff,

v.

SENIOR LIFESTYLE CORPORATION, : **OPINION & ORDER**

Defendant.

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 33), Plaintiff's Response (doc. 35), and Defendant's Reply (doc. 48). For the reasons indicated herein, the Court GRANTS the Defendant's motion.

**I. BACKGROUND**

On December 9, 2010, Plaintiff Henri Eisenbaum filed an Amended Complaint raising numerous federal and state claims arising from the termination of his employment with Senior Lifestyle Corporation ("Defendant") (doc. 4).

Plaintiff began working for Defendant in 1990 as a maintenance employee at Seasons Retirement Community ("Seasons") (doc. 35). In 2005, he was promoted to Director of Maintenance at Seasons (Id.). His duties included coordinating apartment readiness with other departments, handling resident work order requests, supervising the maintenance staff, and performing both emergency and preventative maintenance (doc. 38). Prior to bringing allegations of sexual harassment, Plaintiff had been disciplined

once in July 2006 for concerns that he was inaccurately reporting his time (doc. 33).

Michelle Chasteen ("Chasteen") was employed at Seasons as Director of Sales until February 2009 (docs. 35, 44). Her primary duties were to advertise and market the retirement community to potential residents (doc. 40). As such, she worked with Plaintiff to ensure that the apartments were ready for potential residents to tour and occupy (Id.). Both Chasteen and Plaintiff reported to the Executive Director of Seasons, a position held by John Quattrone ("Quattrone") from 2006 until March 2009 (doc. 33). After Quattrone, the position was held in the interim by Linda Keith ("Keith") until Thomas Rotz took over in July 2009 (doc. 42).

Plaintiff alleges that over a period of a few weeks in the spring of 2007, Chasteen made approximately six inappropriate comments that Plaintiff had a "nice butt" and "nice legs" (doc. 33). Plaintiff says that after a few weeks, he asked Chasteen to stop making such comments, which she did immediately (Id.). Chasteen denies she made the alleged comments to Plaintiff or others (doc. 40). Plaintiff further asserts that after asking her to stop making inappropriate comments, Chasteen became uncooperative and hostile towards him (doc. 35).

On June 14, 2007, Mark Francis and Adam Kaplan from Defendant's corporate office conducted a tour of Seasons (doc. 44). The tour revealed a variety of problems with Plaintiff's job

performance (doc. 38). Quattrone stated that after the tour, he was told by his boss, Kevin Bennema, that there were problems with the personnel and the building and that he should issue a Performance Improvement Plan ("PIP") to Plaintiff, which was done on July 6, 2007 (doc. 44).

While Plaintiff claims that he complained to Quattrone IN July 2007 about Chasteen's comments before receiving the PIP, Plaintiff's attorney in a letter dated May 13, 2009 stated that the PIP was issued before Plaintiff allegedly made a complaint (docs. 33, 35). Quattrone, however, remembers only that Plaintiff and Chasteen were having trouble getting along, not that there was ever a complaint of sexual harassment (doc. 44).

Plaintiff received another write-up nearly two years later from Keith on April 15,2009 after a malfunctioning door alarm was left unaddressed (doc. 38). Plaintiff was also orally reprimanded on April 22, 2009 for failing to fix a resident's toilet (doc. 35). After a maintenance visit from the Corporate Maintenance Director on April 29, 2009, Plaintiff was informed of a number of deficiencies and asked to correct them (doc. 38). On May 15, 2009, Plaintiff received a Final Written Counseling Notice for his failure to address the tasks outlined during the maintenance visit and failure to respond to Keith's email request to discuss the problems (Id.).

Plaintiff hired an attorney who sent the Corporate Director of Human Resources, William Blouin, a letter dated May 13,

2009 outlining Plaintiff's fears that he was a target for termination (doc. 36). Plaintiff's attorney sent another letter on July 8, 2009 which stated that Plaintiff's employment was "no longer tenable" and presented the option of entering into negotiations regarding a potential severance agreement (Id.).

Plaintiff suffered a work-related injury on August 1, 2009 that caused him to go on medical leave on September 1 (doc. 38). On October 5, Defendant informed Plaintiff that he was being placed on twelve-week Family and Medical Leave Act (FMLA) leave effective September 1 that would expire on November 25, 2009 (doc. 36). This letter also clearly stated that failure to report back to work would be deemed a voluntary resignation (Id.). On October 23, Plaintiff's attorney sent a letter to General Counsel Stephen Levy again expressing a desire to reach a "global settlement" (Id.). When Plaintiff failed to return to work on November 25, Defendant sent him a letter saying he had been terminated pursuant to its policies (doc. 38).

Plaintiff alleges that his employment was improperly terminated by Defendant and claims that (1) Defendant created and maintained a sexually-hostile work environment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e (2006); (2) Defendant terminated Plaintiff in retaliation for complaints that he was sexually harassed in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e (2006); (3) Defendant terminated Plaintiff in

retaliation for filing a workers compensation claim in violation of Ohio Revised Code Section 4123.90[1]; and (4) Defendant terminated Plaintiff for hiring an attorney in violation of Ohio public policy.

On October 1, 2012, Defendant filed a Motion for Summary Judgment on Plaintiff's claims (doc. 33). Plaintiff has responded and Defendant replied such that this matter is ripe for the Court's consideration.

**II. STANDARD**

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson

[1]As noted in Defendant's Memorandum in Opposition (35), Defendant has withdrawn his Workers Compensation retaliation claim, and therefore the Court will not address it further.

v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment. . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there

be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of his claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion

for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

## III. DISCUSSION

### A. Plaintiff's Hostile Work Environment Claim

Title VII of the Civil Rights Act prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under a hostile work environment theory, a "workplace [that] is permeated with discriminatory intimidation,

ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" violates Title VII. Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted); Newton v. Ohio Dept. Of Rehab. and Correction- Toledo Corr. Inst., 496 F.App'x 558, 563 (6th Cir. 2012) . Additionally, "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment . . . is beyond Title VII's purview." Harris, 510 U.S. at 21.

To establish a Title VII claim of sexual harassment based on a hostile work environment, an employee must show that (1) he is a member of a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment was based on his sex; (4) the harassment unreasonably interfered with his work performance and created a hostile work environment; and (5) the employer knew or should have known of the alleged sexual harassment and failed to take corrective action. Newton, 496 F.App'x at 564 (citing Valentine-Johnson v. Roche, 386, F.3d 814 (6th Cir. 2004)).

**i. Chasteen's Alleged Comments**

Defendant argues that Chasteen's alleged comments are insufficient to establish a sexually hostile work environment (doc. 33). As isolated comments made over the course of a few weeks, Defendant asserts that Chasteen's alleged sexual harassment in no way affected Plaintiff's ability to do his job (Id.). Furthermore,

Defendant claims that it acted appropriately in addressing Plaintiff's complaints (Id.).

Plaintiff calls the alleged comments by Chasteen "admittedly trivial," "silly," and "sophomoric" and turns to a discussion of the alleged subsequent workplace hostility (doc. 35). In characterizing the alleged comments as such, Plaintiff effectively abandons his claim of a sexually hostile work environment because unless extremely serious, "simple teasing" will not amount to discriminatory changes in the terms and conditions of employment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); see Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000). Additionally, Plaintiff does not claim that the alleged comments interfered with his work performance. Finally, Plaintiff himself states that Chasteen stopped making comments about his anatomy after he asked her to stop and before he complained about them to Quattrone (doc. 38). As such, there is no corrective action Defendant could have taken to stop the alleged comments from continuing as they were no longer occurring.

**ii. Chasteen's Alleged Denigration**

Defendant argues that Plaintiff fails to show any evidence of how Chasteen discredited him to their superiors (doc. 48). Defendant further asserts that the alleged behavior by Chasteen did not constitute sexual harassment because it was not based on sex (Id.).

Plaintiff argues that Chasteen attempted to discredit him and denigrate his work as "her retaliation against him for protesting her sexual advances" (doc. 35). The only specific instance of alleged retaliation that Plaintiff references is a phone call between Chasteen, Mark Francis, and Plaintiff that took place in 2007 in which Chasteen allegedly said "You see, Mark, this is what I'm talking about, he's uncooperative, and I can't work with this guy" (doc. 38).

Harassment that is not committed because of sex is not actionable under Title VII. Morris, 201 F.3d at 790-91. There is no evidence in the record to suggest that any of Chasteen's alleged hostility toward Plaintiff was sexual or so extreme as to qualify as a hostile work environment. Plaintiff's claims of alleged retaliatory conduct by Chasteen do not fall into the hostile work environment equation.

To the extent that a claim of retaliatory harassment is present in this case, Chasteen's alleged actions, even if true, are simply "the ordinary tribulations of the workplace" and are not sufficiently severe to rise to the level of retaliatory harassment. See Swanson v. Livingston County, 270 F. Supp. 2d 887, 899 (E.D. Mich. 2003) (holding that eighteen examples of alleged harassment including co-workers shunning Plaintiff and e-mails and phone calls of co-workers professing their love are not sufficient to create a hostile work environment).

**B. Plaintiff's Sexual Harassment Retaliatory Termination**

**Claim**

Title VII of the Civil Rights Act prohibits an employer from discriminating against an employee "because he has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of sexual harassment retaliation, an employee must show that (1) he engaged in protected activity; (2) his employer knew of the exercise of his protected rights; (3) the employer took an employment action adverse to the employee or he was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the activity and the adverse employment action or harassment. Fuhr v. Hazel Park School Dist., 710 F.3d 668, 674 (6th Cir. 2013) (citing Garner v. Cuyahoga Cnty. Juvenile Court, 554 F.3d 624, 639 (6th Cir. 2009)).

If the employee can demonstrate a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Fuhr, 710 F.3d at 674 (citing Spengler v. Worthington Cylinders, 615 F.3d 481, 492 (6th Cir. 2010)). Once a legitimate reason has been put forth by the defendant, the burden falls on the plaintiff to rebut the reason offered and show pretext by demonstrating that (1) the employer's stated reason for termination has no basis in fact; (2) the reason offered for termination was not the actual reason; or (3) the reason offered was insufficient to explain the employer's action. Spengler, 615 F.3d at 493 (citing Imwalle v. Reliance Medical Products, Inc., 515 F.3d 531, 545 (6th Cir. 2008)); Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994) (citing McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993)) (overruled on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009)).

**1. Causal Connection**

Defendant argues that Plaintiff fails to establish the causal connection between protected activity and termination required to make a prima facie case. First, Defendant points out that Plaintiff cannot establish temporal proximity between his complaint about Chasteen's comments in July 2007 and his November 2009 termination (doc. 33). According to Defendant, Plaintiff's May 2009 letter is of no import because subsequent letters are irrelevant in determining temporal proximity (doc. 48 citing Dautartas v. Abbott Labs., No. 11AP-706, 2012 Ohio 1709, *12 (Ohio App. 10th Dist. April 17, 2012) (the first instance of knowledge of protected activity is the point of reference for calculation of temporal proximity)). Citing Miller v. City of Canton, 319 F.App'x 411, 422 (6th Cir. 2009), Defendant asserts that a gap in time greater than six months is insufficient to support a temporal connection (doc. 33). Furthermore, Defendant argues that Plaintiff has not established sufficient evidence to support a causal connection between his allegations and his termination (Id.).

Plaintiff contends that temporal proximity can be established through letters sent in July and October of 2009, diminishing the gap in time (doc. 35). Citing Nguyen v. City of Cleveland, 229 F.3d 559, 566-67 (6th Cir. 2000), Plaintiff argues that even a six month gap using his May 2009 letter as a benchmark can satisfy temporal proximity (doc. 35). Plaintiff further claims there is sufficient evidence to support a causal connection even without temporal proximity (Id.).

Having reviewed this matter, the Court finds well-taken Defendant's view that the gap between Plaintiff's July 2007 complaint and his termination in November 2009 is too large to show temporal proximity.

Plaintiff is unable to establish a causal connection between his protected activity and his termination. Although Plaintiff invokes Ballanger v. Bunge Foods, No. 00-5120, 2000 WL 1871727, at *2 (6th Cir. December 12, 2000), the Court finds the instant case in a different posture. In Ballanger, the court found the plaintiff had adequately alleged his employer unjustly "papered" him over a three-year period. Id. In contrast, here supervisors did not begin to subject

Plaintiff to heightened scrutiny after his complaint. Although it was unclear whether Plaintiff complained to Quattrone before or after his July 6, 2007 PIP, even assuming his complaint preceded the PIP, Plaintiff did not receive an additional write up until April 15, 2009 (doc. 38). No reasonable jury could find that Defendant retaliated immediately with a PIP, then waited approximately two years to subject Plaintiff to further retaliation. Finally, as discussed below, Plaintiff's reprimands were not unsubstantiated as they pointed to the existence of specific un-refuted problems with Plaintiff's performance.[2]

[2]The Court further finds that to the extent that Plaintiff claims that the issuance of a PIP and three other warnings was retaliation in violation of Title VII, such claims fail. First, none of the four disciplinary actions qualifies as an adverse employment action because they did not cause Plaintiff to suffer "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998). Furthermore, even if any of these disciplinary actions did constitute adverse employment actions, Defendant has demonstrated legitimate justifications for each that Plaintiff does not rebut as pretext.

**2. Legitimate Reason and Pretext**

Even if Plaintiff had established the elements of a prima facie case for retaliation, Defendant provides Plaintiff's failure to follow company policy in returning from FMLA leave as a legitimate reason for termination (docs. 33, 48). Additionally, Defendant asserts that Plaintiff is unable to demonstrate that the proffered legitimate reason behind the termination was pretextual (doc. 33).

Plaintiff contends Defendant's articulated legitimate reason for termination was pretextual (doc. 35). First, Plaintiff claims that Defendant has been selective in its enforcement of its FMLA return policy as Quattrone himself had been off of work for fifteen weeks in 2007, but was allowed to keep his job (Id.). Plaintiff further argues that he kept Defendant up to date on his recovery and expressed his desire to return to work (Id.). Finally, Plaintiff points to Defendant's failure to rehire him when his previous job remained open as indicating that termination for exhaustion of his FMLA leave was pretextual (Id.).

Plaintiff fails to point to any evidence that his not returning from FMLA leave was a pretextual reason for his termination. His assertion that Quattrone was on FMLA leave for fifteen weeks and not terminated is unsubstantiated. On the contrary, the only evidence on the issue demonstrates that Quattrone was never placed on FMLA leave and worked from home for the fifteen weeks in question (doc. 48).

Plaintiff's second argument similarly fails. In examining the record, this Court finds no evidence that while on FMLA leave,

Plaintiff expressed a desire to return to his position. Rather, a letter from Plaintiff's attorney dated July 8 stated a desire to negotiate a severance package as his employment was no longer tenable (doc. 35). Another letter dated October 23 stated "The bottom line consideration is ensuring Mr. Eisenbaum's return to gainful employment as soon as possible, whether it involves returning to work as the Maintenance Manager at The Seasons, or to an equivalent position elsewhere" (doc. 36). Furthermore, the note from the doctor saying Plaintiff could return to work on December 14 was dated November 30, five days after Plaintiff had already been terminated (Id.). This evidence is not sufficient for any reasonable jury to determine that Plaintiff's termination was pretextual.

Finally, Plaintiff's argument that Defendant's refusal to rehire him once he was terminated demonstrates pretext fails. Though Plaintiff asserts that he received a rejection letter (doc. 35), there is no evidence to show that anyone at Seasons was aware of his application. The alleged rejection letter reads "Thank you for your interest in a position with our company. Your application has been received. We will review your resume and contact you if we believe your background and skills to be a good match with any of our current positions" (doc. 42). This automated email does not show that anyone at Seasons was aware of his application. Even if Defendant was aware of his application, Plaintiff has not offered any evidence showing that the stated reason for termination had no basis in fact, was not the actual reason, or

was insufficient to explain the employer's action. Spengler, 615 F.3d at 493 (citing Imwalle, 515 F.3d at 545); Manzer, 29 F.3d at 1084 (citing McNabola, 10 F.3d at 513) (overruled on other grounds by Gross, 557 U.S. 167 (2009)).

**C. Plaintiff's Hiring Counsel Retaliation Claim**

Ohio law prohibits termination of an employee in violation of public policy when (1) a clear public policy exists; (2) dismissing employees in under the circumstances involving the plaintiff's dismissal would jeopardize the public policy; (3) the dismissal was motivated by conduct related to the public policy; and (4) the employer lacked an overriding legitimate business justification for the dismissal. Trout v. FirstEnergy Generation Corp., 339 F.App'x 560, 567 (6th Cir. 2009) (citing Collins v. Rizkana, 652 N.E.2d 653, 657-58 (Ohio 1995)).

Defendant argues that Plaintiff is unable to establish that his termination was motivated by his decision to hire counsel and that Defendant lacked a legitimate business justification for the termination (doc. 33). Again citing Miller, 319 F.App'x at 422, Defendant repeats its argument that there is no temporal proximity as Plaintiff was terminated six months after Defendant became aware that he had hired counsel (Id.). Further, Defendant notes that Plaintiff is unable to point to any evidence in the record that he faced animus as a result of hiring an attorney (doc. 48).

Plaintiff again contends that this Court should look to the subsequent letters written by his attorney as a reference point to establish temporal proximity (doc. 35). Additionally, Plaintiff

argues that the increasingly aggressive tone of multiple letters must have been received poorly, leading to termination (Id.).

Plaintiff has again failed to show a genuine dispute of material fact. Both parties agree that Plaintiff's counsel's May 2009 letter informed Defendant that Plaintiff had hired an attorney. As just over six months passed before Plaintiff was terminated, "more than temporal proximity must be shown to establish a causal connection." Miller, 319 F.App'x at 422 (citing Clay, 501 F.3d at 718; Hafford, 183 F.3d at 515). Further, Plaintiff does not establish a causal connection by simply pointing out the increasingly aggressive tone of counsel's letters. Finally, and dispositive of the matter, Defendant provided an undisputed legitimate business reason for terminating Plaintiff, namely that he failed to follow company policy in returning from FMLA leave (docs. 33, 48).

## IV. CONCLUSION

Plaintiff has failed to show that a reasonable jury could find that Defendant created a sexually hostile work environment or terminated Plaintiff as retaliation for making a claim of sexual harassment or hiring an attorney. A reasonable jury could only find that Plaintiff's termination was the result of his failure to report back to work at the end of his FMLA leave. Consequently, the Court GRANTS Defendant's Motion for Summary Judgment (doc. 33), and DISMISSES this matter from the docket.

SO ORDERED.

Dated: July 15, 2013

/s/ S. Arthur Spiegel

S. Arthur Spiegel

United States Senior District Judge